Thank you, Your Honor, and may it please the Court. My name is Matt Jones. I will be arguing for the appellants in both of the consolidated cases today. If I may, I'd like to reserve five minutes for rebuttal. All right. As this Court has explained, the Latin Cross represents, with relative clarity and simplicity, the Christian message of the crucifixion and resurrection of Jesus Christ, the doctrine at the heart of Christianity. The federal government displays a 43-foot tall Latin Cross at the top of Mt. Soledad on federal property in La Jolla. The Establishment Clause forbids that display because, as this Court has repeatedly held, Latin Cross displays like the one on Mt. Soledad are reasonably perceived as governmental endorsement of Christianity. And even if the display of the Mt. Soledad Cross is there in a deliberate effort to create a war memorial, the Establishment Clause forbids that display because, as this Court has repeatedly said, a Latin Cross war memorial sends the unmistakable and deeply The District Court concluded otherwise, that the Mt. Soledad Cross display does not violate the Establishment Clause because, in context, the cross sends a message that is patriotic and nationalistic, not religious, because it is part of a war memorial. But this Court has already considered and already rejected the argument that the District Court accepted. Are we bound by that, by those prior statements and prior assessment? Yes, yes, Your Honor. In Ellis against the City of La Mesa, where this Court said that even if the Mt. Soledad Cross was indisputably a war memorial, a sectarian war memorial, carries an inherently religious meaning, the Court is bound To figure out in that Ellis case was under the state constitution, is that correct? That's correct, Your Honor. But regardless of the governing law that applies, the message that the cross sends should not change. The question then just becomes, is the message valid under the federal constitution? Ellis makes clear it's not valid under the state constitution. Now the Court must decide whether that sectarian... Are the standards the same under the federal constitution and the state constitution? I think that this Court has said on a number of occasions that the California constitution is somewhat broader in its anti-establishment principles than is the federal constitution. What do we do? Let's see, Ellis, I'm trying to always place these cases also in time context. Is that a pre-Van Orden case? Yes, it is. Now this adds the wrinkle that you really need to deal with. Actually, both sides need to deal with. And that is with the advent of Van Orden and then our follow-on case of Card, do we have a new landscape of how we're supposed to analyze cases like this cross case? No, Your Honor, I don't think you do. I believe the governing law is still which is the test that this Court applied in Bono and SCSC. This is why. The court in Card was faced with a difficult situation where it was clear that Lemon is still, as they said, the benchmark, the general rule that applies in establishment clause challenges. But the monument that was being challenged there was virtually identical in appearance and origin to the monument that was at issue in Van Orden. The court weighing those two principles said that the Van Orden exception would apply in certain Ten Commandments cases, not all Ten Commandments cases, and said that Van Orden should apply in contexts closely analogous to that in Van Orden. For a number of reasons, this case is not a close analog of Van Orden. Here, of course, most basically there's a different religious symbol. But beyond that, unlike the Ten Commandments monument at issue in Van Orden, the Mount Soledad Cross dominates its physical site. It is not next to any comparably sized secular monuments. In addition, Justice Breyer found that the site of the Texas State Capitol grounds in Van Orden did not lend themselves to religious activity. That's in stark contrast to Mount Soledad, which has for decades been the site of celebrations of the resurrection of Jesus Christ. It is a site that was designed for and has been regularly used for religious activities, which stands in stark contrast to Van Orden. For those reasons and others, Van Orden does not apply here. And it is limited to close analogs. If we were to disagree with you and say that Van Orden does apply, does it make a difference in the outcome from your perspective? It's really an academic question because Justice Breyer's analysis in Van Orden largely overlaps with the analysis in Lemon. He looks to similar factors about the purpose and the context and history and the physical setting. Well, let's talk about purpose because we have a fluid chronology here, if you will, where things change over time. We can start, of course, back at the beginning of last century, but more accurately, probably in the middle, in the 50s, when things are inaugurated. Right, in the current cross. The current cross is the 50s. So when we look to purpose, now that things have changed and we have the cross in the hands of the federal government, as I read the cases, I would suggest that we would look to the congressional purpose in 2006. And I'm interested to know your view if that's the correct benchmark or if there's another benchmark. Before I answer your question, Judge McKeown, I want to make clear that appellants believe that Lemon's effects test is the most straightforward way to answer this inquiry. But directly to answer your question, the government's continued purpose in 2006 in displaying the cross is the question here. However, we believe that, as McCreary makes clear, the history and specific sequence of events leading up to that display are relevant to determining what the federal government's current purpose in displaying the cross is. That's particularly true on the facts in this case, where the government has associated itself with that history and closely allied itself with the historical actors who were responsible for that history. Both the government and the litigation here and Congress said that their purpose in displaying the cross was to preserve a historically significant memorial. They cannot at the same time rely on that history and then divorce themselves from it, saying that it has no effect on their current display. Furthermore, the 2006 Act, through the 2006 Act, the government has closely allied itself with the historical actors who originally dedicated the cross to Christ, had annual celebrations of Jesus' resurrection there, and after this litigation began, erected secular monuments to secularize the cross. The Act requires that the Mount Soledad Memorial Association be the government's permanent partner in the administration of the Mount was in the Oval Office with President Bush when he signed the Act. You make that sound like it's some nefarious, it just seemed logical to me. If you look to the purpose, this is where I'm having some trouble because McCreary, I think they were looking at a Kams situation, so I'm not completely sure why McCreary is an analog to this case. I think McCreary fortifies the purpose inquiry and lays out the basic steps and the sort of evidence that the court is to look at in determining whether there is a predominant secular purpose, both whether that purpose is a sham and whether it is secondary to some other religious purpose. And they make clear that reasonable observers have reasonable memories, history matters, the world is not made new every morning, and it's important to look at the entire history of the cross when determining why the government intervened to save it and why it displays it to this day. But in terms of why it might have intervened, we have a congressional, I don't know if they call it a preamble or what, they have like all the little ABCs of why they did this. Is it your position that that's a sham on the part of Congress? We're reluctant to say that it's a sham, but if you look at the way that... Reluctant to say it's a sham, then shouldn't we likely also be reluctant to invade the congressional purpose to suggest that it's not what it says? I think this is one of the reasons that the effects inquiry is the most straightforward way for the court to decide this case. But if it does reach the purpose test, there are a few guiding points. First of all, the sort of deference that the court would normally give to acts of Congress in review of economic legislation is not appropriate here. That's what the court said in McCreary. Second, I don't think it's necessary to say that Congress was insincere in what it stated its purposes were to find that it nevertheless had a religious purpose. They say that they are acting in order to preserve a historically significant monument. But what that actually means under the words is that they are acting to save the cross. The word preservation says that something needs to be saved. And of course, the only element on is the cross. In addition, they describe it as historically significant. And of course, only the cross has any historical significance as the secular elements on Mount Soledad were only added in the five years before Congress acted to take the Mount Soledad cross and surrounding property. So, I mean, one of the questions I have is how... If somebody has a potential establishment clause problem and then they try to fix it, say, by adding bollards and plaques and things like that, isn't it possible in effect to fix something like this? I think there... You might not say fix, but it certainly changes, at least it shifts the balance and the focus, doesn't it? I think that's right. And the court in McCreary said that it did not... A government's previous religious purpose does not forever taint its ability to deal with the same subject matter. But I think on the facts of this case, that just doesn't work. Because the recently added elements are subordinate to and are overwhelmed by the physically dominant cross, they can be... The secular elements can only be seen on a much closer approach. And even for those who come up on to Mount Soledad, the secular elements are subordinate. They don't even... Let me ask about that. If you're driving by, as your record says, on Interstate 5, you can see the cross according to the record. That's right. How do you know it's on government property? I think most people in San Diego would be aware of that fact, just given the controversy that attended the display of this Mount Soledad cross. But I think in any event, the reasonable observer is deemed to know that that land is government property under this court's decision in Bono. I mean, it seems that it's a little bit different. We're all awaiting to see how Bono might be decided. But however it's decided, it was... You couldn't see this cross unless you were on the government land, which was this thousands of acres of National Monument territory. So that's quite a bit different than looking at the cross, because the cross you can see from a lot of places that wouldn't let you know. It could be a church, for example, right? Right. I think as a factual matter, most people in San Diego probably do know it's government land just because of the controversy. But I think under Bono, where the government argued that the reasonable observer wouldn't know that the cross there was on government land because there was private land nearby, this court rejected that argument, saying that the reasonable observer is deemed knowledgeable of the context and the history of the community and form in which the display stands, including government ownership of the land, and rejected the argument for that reason. I think here the reasonable observer would also be deemed knowledgeable that this public park that's been a public park for nearly 100 years is government land. You wanted to address the effects? Yes, Your Honor. I think that this question is largely controlled by the court's earlier decisions in Bono and SCSC, where this court said that Latin crosses are reasonably perceived as governmental endorsement of Christianity, and that Latin cross war memorials are reasonably understood as the government's effort to honor only Christian veterans. What has changed here, and because context and detail are so important in the Establishment Clause inquiry, is the recent addition of secular elements. And the court should reassess the Mount Soledad cross in light of those recently added elements. But for reasons I've discussed before, such as the overwhelming physical dominance of the cross, and because those recently added elements... I think it would make it a different case, but I don't think it would be all right. The physical dominance up here makes this a much easier case, but... I mean, at what point, when you say the physical dominance, if the cross were... if it were not visible from I-5, I don't even know what the height situation would be, but let's say it weren't. Would that change things? I don't think it would, because the reasonable observer that comes up onto Mount Soledad would still see that the cross is dominant over the other elements that don't even reach as high as the base of the cross. And those other elements are also in range to encircle the bottom of the cross so as to make it the focal point and centerpiece of the display. So, I mean, under that, you couldn't really have a cross in connection with the war memorial. Is that basically your position? I think there are other cases in which it may be possible. It's difficult to pass judgment without knowing all the details, because detail is so important, but one can imagine cases in which the display of the cross and its religious meaning would not be attributed to the government. For example, the Canadian Cross of Sacrifice in Arlington National Cemetery, where it was a gift from the government of Canada designed by the British Empire. Well, that's a pretty remote... I mean, so basically, you're suggesting that you can't really think of a monument memorial situation in which you could use a Latin cross. If the Latin cross was deemed to be the speech of the government, it's difficult to imagine a situation where that would be okay. And thankfully, there are very few cases in which this has occurred. The government has gone to great lengths, along with its amicus, to identify cases, and all those cases can be counted on two hands. And in each of those situations, there are some other elements that reduce and diminish the Establishment Clause concerns that are present in this case. I see that I have a minute and a half left. If the Court would allow, I'd like to reserve some time for rebuttal. I think that's fine. Rebuttal. Good morning, Your Honors. May it please the Court. Katie Kovacs for the United States. I have two basic points to cover today and a preliminary statement about the test the Court should apply. My two basic points will touch on the government's secular purposes for retaining the Mount Soledad Memorial intact and the secular, the predominantly secular effect of the memorial. But as I mentioned, I would like to touch briefly on the question of what test or framework the Court should apply for its analysis. Regardless of whether this Court applies the Van Orden approach or the Lemon test, in this case, the result should be the same. So long as the Court looks at all of the relevant factors, generally under either test, the Court is going to look at broad brush at purpose and effect. And in this case, either way, the District Court's judgment should be affirmed. That said, Van Orden is the most on-point Supreme Court precedent. And in card, this Court held that Van Orden governs the analysis for, quote, long-standing, plainly religious displays that convey a secular message in a non-religious context. So I do think that Van Orden applies the appropriate analysis framework, but I don't think that it matters to the result of the case if you decide to apply the Lemon test instead. Turning to the purpose prong first, I think the appellant's appropriate. Do you think it would be prudent to look at both tests? The District Court did so. It certainly, you know, there would be nothing wrong with it. There is, in this case, a lot of overlap. Justice Breyer's controlling concurrence in Van Orden takes a slightly different view. I think Your Honor discussed this for the certainly card discusses it. But again, the basic inquiries are about purpose and effect. And I think the appellants have appropriately backed off of their argument somewhat about the purpose, because as Judge McEwen observed, in this case, we have a very clear statement from Congress of secular purpose. And it's those same purposes that are why the Navy, which now has continued to retain the cross as part of the memorial. What do we do with the past history? Well, I think the past... Do you just, you know, start fresh from where Congress took over the land and forget all about the past? No, I don't think so, Your Honor. How does that fit into the analysis? And how do you account for that? I actually think Catholic League is an interesting analog, because in Catholic League, you were dealing with a San Francisco proclamation. And Your Honor looked primarily to the text and the legislative history. Here we have very clear statements that Congress was acting to honor fallen service members, to effectuate the will of 76 percent of San Diego voters, and to preserve a historically significant memorial. Note that it's the entire Mount Soledad Park that the city designated as a historic site, not just the cross. And then Your Honor also looked to the timing, the circumstances surrounding the enactment. In this case, the circumstances surrounding the enactment reinforce Congress's statement of secular purpose. There's certainly no indication from the circumstances that Congress was acting for 40 years the cross was standing before the district court and joined it under the state constitution, which is much more restrictive than the federal constitution. And Ellis was decided under the state constitution. And if you look to the precedents that the court relied on in Ellis, for almost all of the significant holdings in Ellis, the court was relying on California precedents, not on federal precedents. So we have a memorial Could we just stop a moment on Ellis and go back to Judge Pius's? Of course. Earlier observation and question, a statement was made by the court in Ellis to the effect of the message the cross sends, which of course goes to the effects, I think not the purpose. But are we bound by that statement in assessing the effects? Again, I think if you look at the Ellis opinion, when the court first talks about how a cross is the preeminent symbol of Christianity, the citation for that statement, the first time the court says it, is a California case. So the court was very much focused in Ellis on the California constitution. And also Ellis was decided in 1993. But once the court makes that statement, it's the court's statement. It is, certainly, Your Honor. But the holding This all started back in 19 The original injunction was 1991. Well, I know, but this all started in 1913. The original, there was a cross erected in 1913. This one was erected in 54. And again, it's, you know, to get back to your question in just a moment. When was it dedicated to memory of veterans? In 1954, when the current cross was erected, it was dedicated, quote, as a lasting memorial to the dead of the First and Second World Wars and the Korean conflict. Okay, but when were veterans' names placed on it? I believe that started in 1989. And it is true that the Memorial Association began to add the secular elements after the litigation ensued. But it was dedicated from the get-go as a war memorial. Getting back to Judge Pius's question about the circumstances, you have an injunction at 40 years the cross is standing before it's enjoined under the state constitution. The city's efforts to sell the memorial are also declared to violate the state constitution. 76 percent of the voters They stood there for all those years because there was no challenge. That's exactly right. There was no challenge until Paulson filed his suit in 1989. So it stood for decades. And that does go to the message even this court in Card held that the decades that a memorial monument stands without challenge indicate that, suggest that the memorial sends a secular message. That may be true. That may not be true. But, you know, people didn't challenge things until your generation came along. We're litigious. We're litigious. But, Your Honor, it is the holding of the Supreme Court in Justice Breyer's controlling concurrence in Van Orden and in Card, both of which do, you know, even if the court thinks that Ellis is relevant precedent, I don't think that it is. But even if it were, Van Orden and Card and Pleasant Grove versus Summum require a new analysis. They are governing precedent in this court now. And under Card and Van Orden, all of those years that the cross stood are relevant to the effect analysis. But just to finish up on Judge Pius's original question, 76% of the voters elect to give this monument memorial to the United States. And yet the district court ordered the city to remove it within weeks. 76% of all eligible voters in San Diego County. Elected to give it to the United States. Or just the people who voted. I'm sorry, I think it's 76% of the people who voted. I'm not sure, but I would think that Your Honor is probably right. It was 76% of the vote. I'm having some trouble figuring out what that means. Although we, of course, you know, in a referendum or something like that, look to respect the electorate. But in deciding whether it's constitutional or not, what does that mean? It plays in, I think, critically to the purpose for which Congress acted. It was one of Congress's three stated secular purposes. One was that Congress was faced with an overwhelming vote. How many people voted? I don't know. It is, the California, the California Court of Appeals. When we have propositions, you get about three or 4% of the people vote. I don't know. The California Court of Appeals decision in Abdelnour probably has more information about the vote. I don't know that it says how many people voted. But Congress is faced with an overwhelming vote by the people of San Diego to give the monument to the United States. That's obviously a secular purpose. How could you say it's overwhelming vote? Well, 76%. I don't know what, you know, how many people. Sorry, it was. The eligible voters who voted. It was an overwhelming portion of the people who voted, Your Honor, yes. And Congress also, I have three basic points on purpose. That's the first. We have in this case. It's important to know how many people voted. I don't, Your Honor, in this case, because regardless of how many people voted, it was one of Congress's three stated secular purposes for retaining this memorial. To honor veterans, to effectuate that vote. The vote was in favor of giving the United States the property. That's a secular purpose. Let me ask you this. And to preserve a historical memorial. Suppose all along it had been known, you know, for its religious purposes. That's really what the community had recognized it for. As a cross, symbol of Christianity and Christ and whatnot. And all of a sudden, Congress comes along and says, well, now it's a war memorial. Can they do that? First of all, that's not this case. But I think the answer would be yes. And I think that the answer is dictated by McCreery. Where the Supreme Court held that past actions don't forever taint the government's effort to deal with an object. The problem in McCreery, which is far different from this case, is that you had the Ten Commandments were posted initially without any statement of purpose at all. Then they amend the display and have a statement of purpose that has explicitly religious elements to it. Then they amend the display again and assert in litigation only secular purposes. But they never rescind that proclamation. That was the problem in McCreery. Here we have a monument that is different from your hypothetical. If you look at page 292 of the appendix, the dedication, and each of the programs every year say that this is a war memorial. It was dedicated to fallen service members. It was also used for religious circumstances. People held Easter services there. People are welcome to hold Easter sunrise services right on the National Mall in Washington, D.C. We don't prohibit people from using public spaces. But particularly since the Navy... But there were continuing veterans' celebrations. There have always been veterans' celebrations there. Particularly since the Navy has been administering the site. It is used predominantly for veterans' ceremonies. Let's just assume you've pretty well exhausted the purpose issue. Now to the effects. So the memorial sends a predominantly secular message. And there are several factors. So you said memorial. You mean the whole site. The entire site. It's quite clear under Supreme Court precedent and this Court's precedent, that Card, among others, that it's the entire site that the Court needs to analyze. You can't just focus myopically on the cross. You have to look at it in context. Well, if you're driving down I-5, what do you see? No doubt, Your Honor. From a distance, all you can see is a cross. But I think Judge McKeown makes a good point, which is from a distance, all you see is a cross. There's no reason to think that it would be Federal land. I think it's not like driving in the Mojave Preserve, where there's a sign that says you're now entering Federal land. But there's no question. From afar, all you can see is the cross. If I drive down I-5, I don't do it too often, but I've never seen it. You know, I haven't seen it from I-5 either. You don't have to comment on Judge Craigerson's driving. But when you – I'm glad you're paying attention to the road. When you come up to the memorial. My wife drives. When you approach the memorial, it's clear Congress was correct in its finding. The cross is fully integrated into a multifaceted war memorial that's replete with secular symbols. I think the most compelling part of the memorial is these black granite plaques. There's several thousand of them at the memorial now. People pay for these plaques. And most of them have a picture engraved of usually a loved one who has died fighting for their country. And often a quote of what service they served in and so on like that. There are also these bollards, which are the things you tie a boat up to on a dock, that are dedicated to organizations. There are benches. There are brick paving stones that are dedicated. It's a fully integrated memorial. You've got this huge thing in the middle. There's no question. The question is, and this is where you get into a disagreement with the Jewish war veterans, I think, is that whether by virtue of its size and the nature of what you're looking at, it just so dominates that these other things kind of fade away. I think it does. I think the district court was correct in observing that it does depend on your perspective, literally where you are standing. There's no question that the cross is quite tall. It's 29 feet tall. I would note that the Canadian Cross of Sacrifice at Arlington is 24 feet tall. It's only five feet shorter. This cross stands on a 14-foot base. That's why we get up to 43 feet, but the cross itself is 29 feet. It's only five feet taller than the Canadian Cross of Sacrifice at Arlington. So I don't think that the size of the cross per se is determinative. When you're standing at the memorial, it is part of an integrated memorial. It's also, as we said- What do you do, though, with these cases that say to the effect that it would appear that by virtue of having the cross that you're endorsing or honoring the Christian veterans and that the Jewish veterans, the Buddhist veterans, the Muslim veterans, and all other men of religions are literally, by history and by religious context, excluded? Those cases predate McCreary, Van Orden, Pleasant Grove v. Summum, and Card. Most significantly, in Summum and in McCreary, the Supreme Court recognized that the Ten Commandments are explicitly religious. They say, I am the Lord thy God. Thou shalt have no other gods before me. That's explicitly religious. And yet, the Supreme Court held that they can be interpreted in many different ways by different people depending on the context. Now, I don't see any difference between the Ten Commandments- Most people, when they read that, they're just looking at the bad things you're not supposed to do. Now, again, I don't think that Supreme Court precedent allows the Court to look at a particular part of a display. You have to look at it in context. I'm just joking. Well, I think you make an interesting point, though, Your Honor. I do? Yes. But the moral proscriptions in the Ten Commandments draw their power from the first, that there is one God and that God prohibits you from doing these things. Particularly with a creche, I don't see any difference between a creche and a cross. If a creche can be secularized, so can a cross. Their primary argument is that a cross is so inherently religious that it can never be sufficiently secularized. Well, if that were true, then how could we ever have creche displays? How could we ever have a menorah? Because a menorah draws its meaning from the Temple in Jerusalem. It is a religious symbol. The fact that a cross has religious significance to some individuals, the fact that it, as you said in Catholic League, the fact that it coincides with the tenets of some religions does not mean that it's invalid. I think you observed in Catholic League what some people consider to be religious, other people consider to be secular. And in this case, the record shows that the government had clearly secular purposes for taking title to the memorial. Those secular purposes continue to give the purpose for retaining the memorial in its form. And the memorial sends a secular message when seen in context. We know this from the multifacetedness of it. We know this from the many years that it stood unchallenged, the 50 years before JWV filed suit. We know this from the physical setting, the location, the fact that the city designated the entire park as a historic site. That makes this case very different from Buono. We have also the court's opinion and access fund, I think is quite relevant here, where the court recognized that Cave Rock has tremendous religious significance to some Native Americans. And yet the court held that doesn't mean that the Forest Service was acting for religious purposes or that it necessarily, Cave Rock obviously doesn't send a religious message to everyone who sees it just because some people. We don't worry too much about the Indians anymore. But we're paying them a lot of money because we've been cheating them for a long, long time. And so, you know, we've had a lot of Indian cases. We had one where treated sewage water was used on holy ground to them. But that was all right because, you know... Yes, the Navajo Nation. I do have one final point, if I may. Which is, as Justice Breyer observed in the Van Orden case, dismantling this memorial would create the very kind of religiously-based divisiveness that the Establishment Clause seeks to avoid. As Judge McKeown recognized for the court in access fund, the First Amendment forbids the government from showing hostility toward religion. And again, Justice Breyer said that the government isn't required to purge from the public sphere all that partakes of the religious. There's no question that a cross has religious significance to many people. But in this context, it is part of a war memorial. It has tremendous secular significance and sends a predominantly secular message. And the district court's judgment should be affirmed. Unless the court has further questions, I thank you for your time. Well, that's an interesting statement. Now, how many... We've had a whole array of plaintiffs throughout the years. And just refresh my memory. How many plaintiffs are there here now? The first plaintiff was Philip Paulson, who filed originally, I think, in 1989. And then he was joined in this lawsuit before the president even signed the 2006 Act. He filed along with Mr. Trump. Then when Jewish war veterans filed suit after the bill was signed into law, they sued as JWV along with several named member plaintiffs. So really, for many years, it was just Mr. Paulson who pursued the suit against the city of San Diego. The suit against the United States... Of course, the United States only became involved in the memorial at all in 2004. And at that time, all of the secular elements of the memorial were in place. It was in its current form. So whatever came before that, I don't think is... In a sense, it's not relevant, certainly, to the United States' intent for condemning the memorial. But to answer your question, there are numerous plaintiffs against the United States. But against the city of San Diego, I believe it was just Mr. Paulson against the city of San Diego. Well, is this one lodge of the veterans, or is it a national? I'm not sure. Perhaps Matt can answer that question better. I think it was listed as a national organization. But I'm sure the plaintiffs can tell us because they are the plaintiffs. I do know that the Jewish War Veterans is the national organization. I don't know if the local chapters have the capacity to sue in their own name, but they're not separately joined. But I'm sure Matt can answer that question. All right. Thank you. Thank you, Your Honor. Just a few additional points, Your Honors. First, to answer that question, Jewish War Veterans of the United States of America is the plaintiff here, which is the national organization of Jewish War Veterans, the oldest veterans service organization still in existence. I first just wanted to correct a few points about the history. The government asserted that there have always been veteran celebrations at the Mount Soledad Cross. That's incorrect. It is true that in 1954, there was a note in the program that the cross would serve as a reminder of the service of veterans. It also said on the front of the program, we dedicate the cross to thee, O Christ. May it forever stand a symbol of this pleasant land of thy great love and sacrifice for all mankind. That poem and that dedication to Christ was read as part of the annual Easter services that occurred during the following decades when there were no veterans events at the cross. Only once in 1973 was there a veterans event at the cross prior to the onset of litigation, at which time veterans events did begin to be held at the cross. As to the point that you were asking about what the court should make about the Congress's reliance on the 76% vote of San Diego citizens in passing the 2006 act. First, I should note that two years before that, roughly the same majority in San Diego voted for a different solution that would have moved the cross a thousand yards away to the grounds of Mount Soledad Presbyterian Church. I don't think we can be totally clear on what the will of San Diego's voters here is, even if all had voted. The fact that the government is relying on the will of the people is another reason that it should not be permitted to confine itself to the bare legislative record carefully crafted in anticipation of litigation. Because they are saying what we are doing is trying to effectuate the will of the people, you must also look to the broader social context and why the people are interested in preserving the display of the cross. The Bill of Rights is a break on majority will, at least these sections. That's right, even if 99% of the voters in San Diego supported the ongoing display of a religious symbol, the majoritarian preferences do not permit the establishment of religion. Finally, I wanted to note that the plaques and bollards mentioned by the government are in no way implicated by this challenge, nor would be headstones on government property that include individual symbols representing the religious beliefs of the individual honored there. Those types of symbols are rightly seen as private religious speech on government property, not as the government's religious speech. That private speech is protected under the First Amendment, whereas government religious speech is prohibited by the First Amendment. If I may, one additional point. The government said that Van Orden should apply in cases where long-standing, plainly religious displays convey a historical or secular message in a non-religious context, quoting this Court's decision in Card. But at the beginning of that statement, this Court in Card said that some long-standing, plainly religious displays deserve such treatment. And to determine the meaning of that word some, you must look elsewhere in the opinion. Immediately following that, Justice Breyer said that Van Orden would apply in difficult, borderline cases. This is not a difficult, borderline case. Indeed, Justice Kennedy, in his dissent in Allegheny, said it would be an extreme case if the government were to permanently display a Latin cross on City Hall. This is obviously not a display on City Hall. It is on other government property. But where the government permanently displays a large Latin cross does not move this case from the realm of an extreme case to a difficult, borderline case. If the Court has no other questions, we would ask you to reverse the district court. Thank you. Thank you. Both sides argue. Very helpful. And you're well prepared. And we thank you for your service.
judges: Pregerson, McKeown, Paez